# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## DOCKET NO. 3:05-CR-38-FDW

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | |
| ) | |
| VINCENT ANTHONY MAYERS, ) | ORDER |
| ) | |
| Defendant. ) | |
| ) | |

NOW BEFORE THE COURT is Defendant's motion to dismiss the charges pending against him on the alleged grounds that his statutory and constitutional rights to a speedy trial have been infringed. U.S. Const. amend. VI; 18 U.S.C. § 3161.

## FACTS

On 28 February 2005 a Grand Jury sitting in the Western District of North Carolina returned a two-count true bill of indictment against Defendant Mayers, charging him with possession of a firearm and ammunition subsequent to a felony conviction. A warrant for Mayers' arrest was issued on 28 February 2005, but was not successfully executed until 1 March 2007, when Mayers was found and arrested within the District of South Carolina.[1] Mayers initially appeared on 2 March 2007 for a Rule 5(c)(3) hearing before United States Magistrate Judge George C. Kosko, of the District of South Carolina, who initially ordered him released conditioned on his reporting to the United States Probation Office in Charlotte. However, Mayers was not immediately released from custody because

---

[1] According to defense counsel, Mayers was not purposefully evading arrest and in fact living "open and notoriously" with his mother in Charleston, SC, during the time that he was considered a fugitive. However, the testimony of BATF Special Agent Sherry Hamlin established that the Government exercised due diligence apprehending Mayers.

he was served with bench warrants stemming from five unrelated South Carolina state court charges, for which he was to serve consecutive 30-day terms of incarceration. After receiving notification that Mayers remained in state custody, on 7 May 2007, Judge Kosko revoked Mayers' bond and issued a warrant which was to be filed as a detainer with the South Carolina Department of Corrections. Mayers finished serving his state prison term on 26 July 2007, appeared before United States Magistrate Judge William M. Catoe on 30 July 2007 for a removal hearing, and was then transferred to the Western District of North Carolina. Mayers was first arraigned in this district on 9 August 2007 before United States Magistrate Judge Carl Horn, III.

## DISCUSSION

### A. Speedy Trial Act

Mayers does not, and indeed cannot, argue that he has not been brought to trial within the seventy day window prescribed by 18 U.S.C. § 3161(c)(1).[2] Instead, Mayers argues that dismissal of the indictment should be predicated on an alleged violation of 18 U.S.C. § 3161(j)(1), which provides:

> If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly –
> (A) undertake to obtain the presence of the prisoner for trial; or
> (B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner of his right to

---

[2] Although Mayers was indicted in February 2005 and made his initial appearance following arrest in the District of South Carolina in March 2007, Defendant's speedy trial clock did not begin to run until after he "appeared before a judicial officer of the court in which such charge is pending," 18 U.S.C. § 3161(c)(1), which in this case did not occur until 9 August 2007, when Defendant was arraigned before United States Magistrate Judge Carl Horn, III, in Charlotte, North Carolina. Accounting for two ends of justice continuances which were granted at the request of Defendant and the time that Defendant's motion to dismiss has been pending, only twenty-three days have elapsed from Defendant's speedy trial clock to-date.

2

demand trial.

As an preliminary matter, Mayers' request for dismissal is foreclosed because Congress did not authorize dismissal as a remedy for violations of section 3161(j).[3] Rather, dismissal is an available remedy only for violations of the 30-day indictment clock or the 70-day trial clock established by sections 3161(b) and (c), respectively. See 18 U.S.C. § 3162(a). Any "other[] willful[] fail[ure] to proceed to trial without justification" consistent with the Speedy Trial Act is merely grounds to sanction the responsible attorney individually. Id. § 3162(b).

Furthermore, no sanctionable conduct occurred in this case. Section 3161(j)(1) "is written in the alternative, requiring a government attorney who learns that a person charged with an offense is serving time in a penal facility to (A) promptly undertake to obtain that person for trial *or* (B) promptly cause a detainer to be filed." United States v. Roper, 716 F.2d 611, 613 (4th Cir. 1983). In other words, the Government must act with reasonable promptness either to bring an incarcerated defendant to trial on its own initiative or to have a detainer filed giving notice to an incarcerated defendant of his right to demand a prompt trial at his election. This obligation does not attach, however, until a government prosecutor actually learns of the accused's incarceration. In this case, Mayers was arrested while he was at large and brought before a federal magistrate judge for an initial appearance on 2 March 2007, where he was ordered released on bond with instructions to self-report to the U.S. Probation Office in Charlotte. It appears that it was not until sometime in May 2007 that the Probation Office learned that Mayers had not been released from custody as ordered, but instead

---

[3] All courts of appeals to decide this issue are in accord. See United States v. Robinson, 455 F.3d 602, 606 (6th Cir. 2006); United States v. Walker, 255 F.3d 540, 542 (8th Cir. 2001); United States v. Lainez-Leiva, 129 F.3d 89, 91 (2d Cir. 1997); United States v. Guzman, 85 F.3d 823, 829 n.4 (1st Cir. 1996); United States v. Dawn, 900 F.2d 1132, 1135-36 (7th Cir. 1990); United States v. Anderton, 752 F.2d 1005, 1007-08 (5th Cir. 1985); United States v. Valentine, 783 F.2d 1413, 1416 (9th Cir. 1986).

3

was being held by the South Carolina Department of Corrections to serve a brief sentence stemming from unrelated state charges. At that point, the fact of Mayers' incarceration was promptly brought to the attention of Magistrate Judge Kosko, who revoked Mayers' bond and issued a warrant which was then filed as a detainer. Accordingly, the detainer and notice prong of subsection (B) appears to have been satisfied even though the Government did not attempt to satisfy subsection (A) by obtaining Mayers for trial by way of writ of habeas corpus *ad prosequendum*. However, even if Mayers did not receive notice of the detainer, the modest three month delay between when the Government first learned of Mayers' state incarceration and when he was released back into the custody of the U.S. Marshal for interdistrict transfer is not sufficiently long to establish a violation of section 3161(j)(1)(A). Cf. Roper, 716 F.2d at 613-14 (holding that a four month delay in obtaining a defendant for trial did not violate section 3161(j)(1) – especially where, as here, the accused had actual notice of the pending charges).

**B.      Sixth Amendment**

The Sixth Amendment aspect of Mayers' motion to dismiss focuses not just on the five month delay while he was serving the state sentence, but also (and primarily) on the twenty-four month delay between the Indictment and his ultimate arrest in South Carolina. The Sixth Amendment right to a speedy trial attaches upon Indictment. United States v. Marion, 404 U.S. 307 (1971). Whether post-accusation delay rises to the level of a constitutional violation must be analyzed under the balancing test adopted by the Supreme Court in Barker v. Wingo, 407 U.S. 514 (1972), which involves weighing: (1) the length of the delay, (2) the reason for the delay, (3) whether and when the defendant asserted his speedy trial right; and (4) whether the defendant was prejudiced by the delay.

While a delay greater than one year oftentimes is deemed to be presumptively unreasonable,[4] the Supreme Court has cautioned that "the length of delay that will provoke [a speedy trial violation] inquiry is necessarily dependent upon the peculiar circumstances of the case." Barker, 505 U.S. at 530-31. In this case, the 33 months that have elapsed since Mayers was indicted does not seem to constitute an extraordinary delay considering that Mayers had left the jurisdiction shortly after his indictment and had yet to be apprehended for the first 24 of those months.

Yet even if the Court were to consider the delay in this case to be presumptively unreasonable, consideration of the other Barker v. Wingo factors fails to establish a sixth amendment violation. Mayers' position seems to be that because he was living "open and notoriously" in South Carolina and was not purposefully evading apprehension, this factor should weigh against the Government for its failure to track him down and arrest him sooner. Under Barker v. Wingo, however, the question is not simply which party is more responsible for the delay but also whether the reason for the delay is inherently valid as opposed to owing to some negligent conduct or deliberate gamesmanship. Id. at 531. As noted above, the reason for much of the delay in this case is a valid one: Mayers was a fugitive living at large in another jurisdiction, and the Government cannot bring to trial a defendant whose whereabouts are unknown to it. The Government at most might be expected to exercise "due diligence" bringing a fugitive to justice, but certainly need not make "heroic efforts" to do so. United States v. Sandoval, 990 F.2d 481, 484-85 (9th Cir. 1993). And here, the credible testimony of BATF Special Agent Sherry Hamlin establishes that all ordinary and reasonable efforts were made to apprehend this defendant: an arrest warrant was issued and entered into the National Crime Information Center (NCIC) database; Agent Hamlin personally

---

[4] See Doggett v. United States, 505 U.S. 647, 652 n.1 (1992).

contacted local police authorities to inform them about the warrant; law enforcement authorities attempted to find him at his last known address(es) and contacted family members and associates in the area to determine his whereabouts; and ultimately ATF sought the assistance of the U.S. Marshal's fugitive unit to locate and apprehend Mayers. Thus, the justification for the delay weighs heavily in favor of the Government. United States v. Grimmond, 137 F.3d 823, 828 (4th Cir. 1998).

Nor does consideration of the remaining Barker v. Wingo factors alter the Court's conclusion. Mayers first asserted his speedy trial right in November 2007 – thirty months after the indictment but within three months of his arraignment and a mere two months before the Court anticipates this defendant will be afforded a trial.[5] This establishes that once Mayers was arrested and transferred to the Western District of North Carolina, both the executive and judicial branches have acted without undue delay to permit Mayers the speedy trial he is now demanding. Finally, while the defense has submitted an affidavit attempting to demonstrate prejudice owing to witnesses which cannot now be located, the contents of the affidavit are neither alone sufficient to demonstrate actual prejudice,[6] nor, even assuming some prejudice, would this factor alone warrant dismissal in light of the other Barker v. Wingo factors and, in particular, the valid justification for the delay.

---

[5] Counsel were notified at hearing on the instant motion to prepare for trial during the 7 January 2008 trial term. Absent another continuance, only five months will have transpired between Mayers' arraignment and trial.

[6] To establish prejudice owing to a missing witness, "the defendant must show that witness truly is now unavailable, that [the witness] would have been available for a timely trial, and that [the witness's] testimony would have been of help to the defendant." 5 Wayne R. LaFave et al., Criminal Procedure § 18.2(e) (3d ed. 2007). The affidavit submitted to the court establishes neither that the witnesses could have been produced for an earlier trial setting nor that their testimony was likely to aid the defense.

**CONCLUSION**

NOW, THEREFORE, IT IS ORDERED that Defendant's motion to dismiss (Doc. No. 16) is DENIED.

The Clerk is DIRECTED to docket this matter for trial during the Court's 7 January 2008 criminal term.

Signed: January 2, 2008

Frank D. Whitney
United States District Judge